# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Todd B. Gibbs,
    Petitioner

vs                                 Case No. 1:01cv838
                                 (Dlott, J.; Hogan, M.J.)

Pat Hurley,
    Respondent

## REPORT AND RECOMMENDATION

Petitioner, an inmate in state custody at the Ross Correctional Institution in Chillicothe, Ohio, brings this action pro se for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition, respondent's answer, and petitioner's reply. (Docs. 1, 4, 12).

### Procedural and Factual Background

The 1999 term of the Hamilton County, Ohio, grand jury returned an indictment charging petitioner with one count of felonious assault as defined in Ohio Rev. Code § 2903.11(A)(2), with a repeat violent offender specification. (Doc. 4, Ex. A).

Petitioner pled not guilty and waived his right to a jury trial. (Doc. 5, Tr. 4-6). After a bench trial, the court found petitioner guilty as charged. (Doc. 5, Tr. 72). In an entry filed on October 6, 1999, the court sentenced petitioner to eight (8) years imprisonment. (Doc. 4, Ex. B).

On October 14, 1999, petitioner filed a motion for a new trial, which the Court denied approximately two weeks later. (Doc. 4, Exs. C, D).

With the assistance of counsel, petitioner filed a timely appeal to the Ohio Court of Appeals, raising the following assignments of error:

1. The verdict below is not supported by sufficient evidence.

2. The court below erred in overruling appellant's criminal Rule 29 motions for judgment of acquittal.

3. The verdict below is not supported by the manifest weight of the evidence.

(Doc. 4, Ex. E). On May 24, 2000, the Ohio Court of Appeals overruled each assignment of error and affirmed the judgment of the trial court. (*Id.*, Ex. G). The Ohio Court of Appeals made the following findings of fact which are entitled to a presumption of correctness:[1]

> The record demonstrates that Gibbs, while engaged in a heated argument with his girlfriend, stabbed her in the back with a knife. Although the girlfriend testified that the stabbing was an accident, another witness testified that she overheard the argument and the girlfriend say to Gibbs, "No, no, don't stab me." Gibbs also admitted to police that he stabbed someone.

(*Id.* at 2).

Petitioner filed an appeal in the Supreme Court of Ohio, raising the following propositions of law:

> **Proposition of Law One:** Where the testimony of the

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner failed to rebut the court's findings with clear and convincing evidence.

> state's principal witness is self-contradictory and is
> refuted by the testimony of the alleged victim, there is
> insufficient evidence to support a guilty verdict.
>
> **Proposition of Law Two:** When the evidence viewed in
> a light most favorable to the prosecution is insufficient to
> allow a rational trier of fact to find the essential elements
> of felonious assault beyond a reasonable doubt, it is error
> to overrule a Rule 29 motion for acquittal.

(*Id.,* Ex. H).  On September 20, 2000, the Supreme Court of Ohio denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (*Id.,* Ex. J). Petitioner sought reconsideration of the ruling, which the Court denied.  (*Id.,* Exs. K, L).

On August 8, 2000, petitioner also filed a petition for post-conviction relief based on ineffective assistance of trial counsel, but the trial court has not ruled on his petition.  (Doc. 4, Ex. M; Doc. 4 at 4).

On August 14, 2000, petitioner filed a pro se application for reopening the appeal pursuant to Ohio Appellate Rule 26(B) based on ineffective assistance of appellate counsel. (Doc. 4, Ex. O). On February 16, 2001, the Ohio Court of Appeals denied the application on the merits. (*Id.*, Ex. Q). Petitioner attempted to appeal this decision to the Ohio Supreme Court, but the Deputy Clerk of the Court returned the documents to him without filing them because they were received one day late. (Doc. 6, attachments 1, 2).  Petitioner asserts, and respondent does not dispute,  that petitioner provided his notice of appeal and memorandum in support of jurisdiction to prison authorities for mailing one week before they were due to be filed. (Doc. 6 at 2).

Petitioner filed the instant petition for a writ of habeas corpus  pursuant to 28 U.S.C. § 2254, raising the following grounds for relief and supporting facts which are quoted verbatim and in pertinent part:

> **Ground One:** Where the testimony of the state's principal
> witness is contradictory and is refuted by the victim, there is
> insufficient evidence.

**Ground Two:** The appellant recieved [sic] ineffective assistance of appellate counsel during direct appeal.

**Supporting facts:** On direct appeal appellate counsel failed to argue that the court drew one inference from another inference to find an essential element of the charge, in violation of Ohio's inference from an inference rule. The stature [sic] required the state to prove Gibbs [sic] culpable mental state and the court relying on a single hearsay statement drew an impermissible inference to find an essential element of a felonious assault.

**Ground Three:** The appellant recieved [sic] ineffective assistance of appellate counsel during direct-appeal.

**Supporting facts:** Appellate counsel failed to investigate and advance the admittance of hearsay testimony that was entered into evidence against the petitioner, which highly affected the result of trial and direct-appeal. Counsel did not develope[sic] the record to include 911 tapes that would have allowed the Appellate Court to review the hearsay testimony in question.

**Ground Four:** Appellant recieved [sic] ineffective assistance of appellate counsel.

**Supporting facts:** On direct appeal appellate counsel failed to argue that the trial court erred in it's [sic] finding that defendant was a repeat violent offender. The stature [sic] requires that the victim suffer serious physical harm, but the evidence demonstrated that the victim recieved [sic] only minor injury.

>   **Ground Five:**[2] Where appellate counsel failed to argue that the Court abused its discretion in sentencing the defendant to the maximum term of imprisonment, the defendant recieved [sic] ineffective assistance of appellate counsel.

(Doc. 1 at 5-6, Supporting memorandum ).

In his answer, respondent argues that petitioner's second, third, fourth and fifth claims are waived due to a procedural default in the state courts, and that petitioner's first claim lacks merit.   (Doc. 4).

## OPINION

### I.  Petitioner is not entitled to habeas corpus relief based on his sufficiency of evidence claim, asserted in ground one of the petition.

In his first ground for relief, petitioner asserts that the evidence was insufficient to support his felonious assault conviction because the state failed to show that petitioner acted knowingly. (*See* Doc. 1, Supporting Memorandum at 4-7).

Under the standard established by the Antiterrorism and Effective Death Penalty Act (AEDPA), codified principally at 28 U.S.C. § 2254 (d), petitioner is not entitled to federal habeas corpus relief, unless the state court's adjudication of his claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).  A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams,* 529 U.S. at 405-06 (O'Connor, J.);

---

[2]This fifth ground for relief was contained in petitioner's supporting memorandum, but not in the actual petition filed. (*See* Doc. 1, Supporting Memorandum at 13)

*Harris,* 212 F.3d at 942.

An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.). Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942. The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

When a state court fails to address the constitutional issues raised, the federal court conducts a de novo review, instead of applying the AEDPA standard of review which applies only to cases "adjudicated on the merits in state court." *Maples v. Stegall,* 340 F.3d 433, 436-437 (6th Cir. 2003) (finding that in *Wiggins v. Smith,* 123 S.Ct. 2527 (2003), Supreme Court reviewed portion of claim not analyzed by state court de novo, without deferring to the state court or applying AEDPA's standard of reasonableness); *see Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003); *Davis v. Secretary for the Dep't of Corrections,* 341 F.3d 1310, 1312 (11th Cir. 2003). *Cf. Wynne v. Renico*, No. 01-10247-BC, 2003 WL 22054238, at *12 (E.D. Mich. Sept. 2, 2003) (district court applied more stringent AEDPA standard where the state court had not directly addressed the constitutional claims, acknowledging that *Maples* and *Wiggins* call for a de novo review and not the more deferential AEDPA review).

The Due Process Clause requires a state to prove beyond a reasonable doubt every fact necessary to constitute the charged offense. *In Re Winship,* 397 U.S. 358, 363-64 (1970). When petitioner raises an insufficiency of evidence claim in a petition

for a writ of habeas corpus, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original). The *Jackson* standard must be applied with explicit reference to the criminal offense as defined by state law. *Scott v. Perini*, 662 F.2d 428, 431 (6th Cir. 1981) (quoting *Jackson*, 443 U.S. at 324 n.16), *cert. denied*, 456 U.S. 909 (1982). Any conflicting inferences arising from the record must be resolved in favor of the prosecution. *See Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir.), *cert. denied,* 464 U.S. 951, 962 (1983). It is beyond the province of the court to weigh the credibility of witnesses, and credibility conflicts must be resolved in favor of the prosecution. *Id.* It is the trier of fact's responsibility to resolve conflicts in testimony and to weigh the evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court may not substitute its own opinion for that of the trier of fact which convicted the petitioner. *Id.* at 318-19; *York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (per curiam), *cert. denied,* 490 U.S. 1049 (1989).

The Ohio Court of Appeals addressed petitioner's sufficiency of evidence claim, as follows:

> In this case, the state had to prove that Gibbs caused or attempted to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance. R.C. 2903.11(A)(2). The state did not, however, have to prove the elements of the repeat-violent-offender specification as set forth in R.C. 2941.149, because Gibbs stipulated that he was a repeat violent offender.
>
> The record demonstrates that Gibbs, while engaged in a heated argument with his girlfriend, stabbed her in the back with a knife. Although the girlfriend testified that the stabbing was an accident, another witness testified that she overheard the argument and the girlfriend say to Gibbs, "No, no, don't stab me." Gibbs also admitted to police that he stabbed someone.
>
> Clearly, Gibb's stabbing of his girlfriend was no accident. The evidence overwhelmingly supports all the elements of felonious assault and weighs heavily in favor of conviction.

(Doc. 4, Ex. G at 2).

In this case, Ms. Oswald, a neighbor and social worker, testified that at 9:15 a.m. on June 19, 1999, she heard screaming coming from the parking lot of the condominium where she lived. (Doc. 5, Tr. 12). She went to the living room window and saw petitioner and Susan Dorman running around. (*Id.* at Tr. 20, 25). She also heard the victim, Susan Dorman, say "no, no, don't stab me." (*Id.* at Tr. 13). At that point, Ms. Dorman was standing with her back against a car, face to face with petitioner. (*Id.* at Tr. 16-17, 26). Ms. Oswald then saw petitioner with a silver object in his hand stabbing Ms. Dorman in the back between her shoulder and neck. (*Id.* at Tr. 14, 17). Ms. Dorman ran past Ms. Oswald's living room window stating "he stabbed me." (*Id.* at 13, 20-21). Ms. Oswald called 911. (*Id.* at Tr. 13). Ms. Oswald testified that she had no doubt that the stabbing was intentional. (*Id.* at Tr. 18).

Ms. Dorman testified that at the time of the incident she was seven months pregnant with petitioner's baby. (*Id.* at Tr. 32). While she was still in bed, petitioner asked her to get up and go to the bank to withdraw twenty dollars that she owed him. (*Id.*). She did not want to and they argued about it. (*Id.* at Tr. 35, 36). She then ran downstairs and out of the house with no shoes on. (*Id.* at Tr. 36, 46). On her way downstairs, she saw petitioner coming upstairs with a bread knife. (*Id.* at Tr. 37). She stated that later she learned that he had been cutting up fruit and bread in the kitchen. (*Id.* at Tr. 38). She indicated that she ran out of the house so that her son would not hear the argument and to get some air. (*Id.* at Tr. 36, 38). She testified that she threatened to give their yet unborn daughter up for adoption. (*Id.* at Tr. 38). She further testified that petitioner followed her out, asking her to return. (*Id.*). She was standing with her back against the car, face to face with petitioner. (*Id.* at Tr. 39). She stated that he put his arm around her in an effort to get her to come back inside, when the knife went into her shoulder. (*Id.*). She had three stitches, a one inch permanent scar and one day of pain, as a result of the stabbing. (*Id.* at Tr. 41, 43). Ms. Dorman insisted that this was an accident. (*Id.* at Tr. 50). She stated that she went over to her neighbor's house immediately after the incident. (*Id.* at Tr. 38).

When Officer Goettke arrived, petitioner approached him with a bloody hand and a blank stare and said "I stabbed someone." (Doc. 5, Tr. 53). After securing petitioner in the car, the officer searched for the victim. (*Id.* at Tr. 54). He found Ms. Dorman within seconds who said "he stabbed me," shaking and upset. (*Id.*). Neither petitioner nor Ms. Dorman indicated to the police that the stabbing was an accident. (*Id.*). The knife was later recovered near a dumpster at the end of the complex. (*Id.* at Tr. 56).

Ohio Revised Code § 2903.11 defines felonious assault as knowingly causing or attempting to cause physical harm to another by means of a deadly weapon or dangerous ordnance. A person acts knowingly when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. Ohio Rev. Code § 2901.22.

In this case, the victim's plea of "don't stab me" was strong evidence that petitioner acted knowingly. The victim, despite her testimony otherwise at trial, at the time of the incident saw that petitioner intended to stab her and pleaded with him not to. Ms. Oswald, who observed the stabbing, also testified that she had no doubt that the stabbing was intentional. Moreover, the victim's position with her back against the car and standing face to face with the petitioner further supports a finding that this act was knowing. Petitioner had to reach his arm up and plunge the knife downward and toward the victim's back to stab her in that part of her body. It does not appear likely that such a motion was accidental.

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that petitioner acted knowingly in that he was aware that his action would harm his girlfriend. Accordingly, this Court concludes that the ruling of the Ohio Court of Appeals on the sufficiency of evidence with respect to felonious assault comports with the Supreme Court's *Jackson* standard and was based on a reasonable assessment of the facts in light of the record evidence.

Accordingly, petitioner is not entitled to habeas corpus relief with respect to his sufficiency of evidence claim asserted in ground one of the petition.

## II. Petitioner has not waived the claims asserted as grounds two through five in his petition.

As his second, third, fourth and fifth grounds for relief, petitioner alleges that his appellate counsel was constitutionally ineffective.

As a preliminary matter, this court must examine whether petitioner has waived any of these claims for relief due to a procedural default in the state courts. In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal

habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c)*; see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If petitioner fails to fairly present his claims through to the state's highest court or commits some other procedural default relied on to preclude review of the merits of petitioner's claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the petition is subject to dismissal with prejudice on the ground that petitioner has waived his claims for habeas corpus relief. *See O'Sullivan,* 526 U.S. at 847-848; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). If, because of a procedural default, petitioner has not had his claims considered by the state's highest court and he can no longer present his claims to the state courts, he has waived the claims for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

A "fundamental miscarriage of justice" occurs only in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995). To be credible, such a claim "requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup,* 513 U.S. at 324. In order to obtain habeas review of the merits of a procedurally-defaulted claim under the "actual innocence" exception, the otherwise-barred petitioner "must show it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of all the evidence, "including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Id.* at 327-28.

Respondent asserts that petitioner has waived his ineffective assistance of appellate counsel claims because he failed to appeal the Ohio Court of Appeals decision denying his application to reopen his appeal to the Ohio Supreme Court. As cause for his default, petitioner asserts that he presented the materials related to perfecting his appeal to the prison mailroom approximately one week before they were due to be filed (March 26, 2001), but they were received by the Ohio Supreme Court one day late (April 3, 2001). (Doc. 6 at 5, attachments 1, 2). Respondent does not take issue with the dates petitioner specifies.

To establish cause, petitioner must show that "some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Carrier,* 477 U.S. at 488; s*ee Coleman,* 501 U.S. at 753 ("[C]ause" is "something external to the petitioner" which "cannot be fairly attributed to him.")  Reliance on prison officials over whom a prisoner proceeding pro se has no control for mailing legal documents is such an "external factor." *See Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir. 2003) (citing *Mohn v. Bock,* 208 F.Supp.2d 796 (E.D. Mich. 2002)). *But see Luby v. Brady,* No. CIV. A. 95-26-SLR, 1996 WL 328589, at *3 (D. Del. May 16, 1996). A petitioner represented by counsel has other options available, such as hand delivery, and the ability to monitor when his documents were received by the court. *Robertson v. Abramajtys,* 144 F. Supp.2d 829, 838-839 (E.D. Mich. 2001) (citing *Houston v. Lack,* 487 U.S. 266, 271 (1988)).  A pro se petitioner does not have these options and is forced to rely on the prison personnel to mail his materials. *Id.*  Since petitioner who was proceeding pro se presented his appellate documents to the prison authorities for mailing before the filing deadline and his documents were not timely received by the state appellate court, he has established cause to excuse his procedural default based on a late filing. *See Maples*, 2003 WL 21960685, at *5; *Mohn,* 208 F.Supp.2d at 802; *Robertson,* 144 F. Supp.2d at 840.

To excuse a procedural default, petitioner has the burden of demonstrating actual prejudice as a result of the alleged constitutional violation, as opposed to prejudice ensuing from the state procedural default. *Maupin v. Smith,* 785 F.2d 136, 139 (6th Cir. 1986) (citing *United States v. Frady,* 456 U.S. 152, 168, 170 (1982). "[I]n analyzing a petitioner's contention of prejudice, the court should assume that the petitioner has stated a meritorious constitutional claim." *Maupin v. Smith,* 785 F.2d at 139. Since a claim of ineffective assistance of appellate counsel includes a prejudice requirement, any assumption that the claim is meritorious would necessitate a finding of actual prejudice. *Moore v. Carlton,* 74 F.3d 689, 692 (6th Cir.), *cert. denied,* 516 U.S. 1183 (1996); *cf. Phillips v. Mills,* No. 98-5061, 1999 WL 685925, at **4 (6th Cir. Aug. 25,

11

1999).

Because petitioner has established cause and prejudice, this Court may now consider the merits of his ineffective assistance of appellate counsel claims.

### III. Petitioner is not entitled to habeas corpus relief with respect to his ineffective assistance of appellate counsel claim, asserted as his second ground for relief.

As his second ground for relief, petitioner asserts that his appellate counsel was constitutionally ineffective for failing to challenge the trial court's reliance on impermissible inferences to find an essential element of the crime in violation of Ohio's double inference rule.

To demonstrate that counsel's performance was constitutionally ineffective, petitioner must show: (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner made an insufficient showing on either ground. *See id.* at 697.

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *See id.* at 688. Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct. *Id.* at 689. In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See id.*

In order to satisfy the second "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different. *See id.* at 694. A showing by petitioner that the alleged errors had "some conceivable" effect on the outcome of the proceeding is insufficient to meet this standard. *See id.* at 693. However, by the same token, petitioner need not demonstrate that his counsel's conduct "more likely

than not" altered the outcome of the proceeding to establish prejudice. *See id.* Petitioner has met his burden if he shows that the decision reached would "reasonably likely have been different absent the errors." *See id.* at 695.

Tactical choices regarding issues raised on appeal are properly left to the sound professional judgment of counsel. *United States v. Perry,* 908 F.2d 56, 59 (6th Cir.), *cert. denied,* 489 U.S. 1002 (1990). Counsel is not required to raise every nonfrivolous issue on appeal. *See Jones v. Barnes,* 463 U.S. 745, 750-54 (1983). Indeed, the process of "winnowing out" weaker claims and focusing on those arguments more likely to prevail on appeal is considered "the hallmark of effective appellate advocacy" as opposed to evidence of incompetency. *See Smith v. Murray,* 477 U.S. 527, 536 (1986) (citing *Jones*, 463 U.S. at 751-52).

Citing *Strickland*, the Ohio Court of Appeals concluded that the "arguments raised in appellant's application show no deficient performance by appellate counsel, and no possibility of prejudice to appellant from counsel's failure to raise the alleged issues." (Doc. 4, Ex. Q at 1). The Court explained:

> First, the record reveals that there were no impermissible inferences drawn from the testimony of the eyewitness, who observed appellant stab the victim; and as this court has already stated on direct appeal, the stabbing clearly was not an accident.

(*Id.*).

"Though widely denounced by both courts and commentators, the rule prohibiting the stacking of one inference upon another is still recognized in Ohio." *Blevins v. Begley Tree Service*, No. 96CA632, 1997 WL 624317, at *5 (Ohio Ct. App. Oct. 10, 1997) citing *Donaldson v. N. Trading Co.,* 612 N.E.2d 754 (Ohio Ct. App. 1992) in turn citing *Motorists Mut. Ins. Co. v. Hamilton Twp. Trustees,* 502 N.E.2d 204 (Ohio 1986). In a nutshell, "an inference which is based solely upon another inference and which is unsupported by any additional fact or another inference from other facts is an inference upon an inference and is not permitted." *Urbanyi v. Administrator, Ohio Bureau of Employment Services*, No. L-97-1312, 1998 WL 160045, at *3 (Ohio Ct. App. March 31, 1998) citing *Hurt v. Charles J. Rogers Transp. Co.*, 130 N.E.2d 820, paragraph one of syllabus (Ohio 1955). The Ohio Supreme Court elaborated on the workings of the double inference rule:

> The rule has very limited application. It prohibits only the drawing of one inference solely and entirely from another inference, where that inference is unsupported by any additional facts or inferences. But the rule does not forbid the use of parallel inferences in combination with additional facts. Nor does it prohibit the drawing of multiple inferences separately from the same set of facts. Because reasonable inferences drawn from the evidence are an essential element of the deductive reasoning process by which most successful claims are proven, the rule against stacking inferences must be strictly limited to inferences drawn *exclusively* from other inferences.

*Donaldson,* 612 N.E.2d at 481 [citations omitted] [emphasis added]. The rule is used as a method of excluding evidence that is "too remote, speculative, or uncertain to be of probative value." *Motorists Mut. Ins. Co.,* 502 N.E.2d at 207. The rule applies to criminal as well as civil cases. *See, e.g., State v. McClutchen,* No. 81821, 2003 WL 22099442, at *9-*10 (Ohio Ct. App. Sept. 11, 2003).

The fact that petitioner stabbed his girlfriend was not inferred from the evidence. There was direct evidence to that effect. Ms. Oswald, an apparently objective eyewitness, saw petitioner stab Ms. Dorman. Moreover, Ms. Dorman also conceded that petitioner had stabbed her. Officer Goettke's testimony that petitioner approached him with a bloody hand and said that he had stabbed someone, from which an inference could be drawn that petitioner stabbed Ms. Dorman, simply bolstered Ms. Oswald's and Ms. Dorman's observations.

The conclusion that petitioner acted knowingly was based on an inference drawn from Ms. Dorman's plea to petitioner not to stab her, which Ms. Oswald overheard. It does not appear to rest on another inference drawn from Ms. Dorman's statement. Accordingly, the trial court did not violate the rule against stacking inferences. Assuming, *arguendo,* that it was based on another inference, the rule against double inferences would still not have been violated. That petitioner acted knowingly is also inferred from the way in which he physically carried out the stabbing, i.e., a knife to Ms. Dorman's back, and from Ms. Oswald's observation that the act was intentional. Accordingly, the inference that petitioner acted knowingly was based on additional facts presented and inferences from those facts and not solely on an inference arising from Ms. Dorman's plea.

Since the trial court did not rely on impermissible double inferences to support the conviction, appellate counsel was not deficient in failing to raise this claim. The

14

determination of the Ohio Court of Appeals rejecting petitioner's claim of ineffective assistance of appellate counsel based on counsel's failure to challenge the trial court's reliance on impermissible inferences in violation of Ohio's double inference rule was neither contrary to nor involved an unreasonable application of the Supreme Court's standard in *Strickland*, and was not unreasonable in light of the record evidence. Therefore, petitioner is not entitled to habeas corpus relief with respect to this ineffective assistance of appellate counsel claim, asserted in ground two of the petition.

**IV. Petitioner is not entitled to habeas corpus relief with respect to his ineffective assistance of appellate counsel claims, asserted as his third ground for relief.**

As his third ground for relief, petitioner contends that appellate counsel was ineffective for failing to argue that trial counsel erred in failing to object on hearsay grounds to the admission into evidence of Ms. Dorman's plea not to stab her. In addition, petitioner contends that trial counsel should have retrieved the 911 tape to determine whether Ms. Dorman's testimony contained any statements inconsistent with the tape.

In rejecting this claim, the Ohio Court of Appeals determined that petitioner's claim was meritless because the victim's statement, "no, no, don't stab me," falls within the excited utterance exception to the hearsay rule. (Doc. 4, Ex. Q at 2).

Ohio Rule of Evidence 803(2) defines an excited utterance as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" and provides that the statement is an exception to the hearsay rule, despite the availability of the declarant. To be considered an excited utterance, four conditions must exist:

> (1) An event that was startling enough to produce a nervous excitement in the declarant; (2) the statement must have been made while under the stress of excitement caused by the event; (3) the statement must relate to the startling event; and (4) the declarant must have personally observed the startling event.

*State v. Kalia*, No. 2002-T-0023, 2003 WL 21892403, at *3 (Ohio Ct. App. Aug. 8, 2003) citing *State v. Taylor*, 612 N.E.2d 316 (Ohio 1993). The controlling issue is whether the declaration was made while the declarant is under the stress of the event so

that the statement resulted from impulse rather than reflective thought. *Taylor*, 612 N.E. 2d at 322; *State v. Humphries,* 607 N.E.2d 921, 927(Ohio Ct. App. 1992).

In this case, the startling event was petitioner following the victim around in a parking lot holding a knife, and ultimately coming face to face with her while her back was against a car. (*See* Doc. 5, Tr. 26, 29). That the event was startling enough to produce a nervous excitement in the declarant is evidenced by the victim screaming and running around flailing her arms. (Doc. 5, Tr. 13, 19, 29). Police officer Geottke testified that the victim was still upset and shaking when he found her after the stabbing. (Doc. 5, Tr. 54). The statement "no, no, don't stab me" was made while petitioner was following Ms. Dorman with knife in hand and therefore, while Ms. Dorman was under the stress of the event. The statement clearly related to the event. The declarant, Ms. Dorman, personally observed the startling event for she testified that she observed petitioner following her out with a knife. (Doc. 5, Tr. 36-39).

Since Ms. Dorman's statement was an excited utterance, an exception to the hearsay rule, trial counsel's failure to object to it as hearsay did not prejudice the defense. In the absence of a showing of prejudice, trial counsel could not be found constitutionally ineffective. Appellant counsel's failure to raise an ineffective assistance of trial counsel claim on this ground also did not prejudice the appeal because the claim would have been unsuccessful. Accordingly, petitioner has failed to demonstrate ineffective assistance of appellate counsel for failure to raise a claim that trial counsel erred in not objecting to Ms. Dorman's statement on hearsay grounds. The determination of the Ohio Court of Appeals rejecting petitioner's claim of ineffective assistance of appellate counsel on this ground was neither contrary to nor involved an unreasonable application of the Supreme Court's standard in *Strickland*, and was not unreasonable in light of the record evidence.

In the third ground for relief, petitioner raises a related claim that appellate counsel was ineffective for failing to argue on appeal that trial counsel should have retrieved the 911 tape of Ms. Oswald's call to the police to determine whether there were inconsistencies in her testimony. Since there has been no showing that the 911 tape would have been helpful to the defense, petitioner has not shown that trial counsel's failure to take that step prejudiced petitioner's case, and therefore, appellate counsel's failure to raise the issue was similarly not prejudicial to the appeal. Accordingly, petitioner has failed to demonstrate ineffective assistance of appellate counsel for failure to raise a claim that trial counsel erred in not obtaining the 911

tapes.[3]

In conclusion, petitioner is not entitled to habeas corpus relief with respect to this ineffective assistance of appellate counsel claims, asserted in ground three of the petition.

### V.  Petitioner is not entitled to habeas corpus relief with respect to his ineffective assistance of appellate counsel claims, asserted as his fourth and fifth grounds for relief.

As his fourth ground for relief, petitioner argues that appellate counsel erred by not challenging the trial court's finding that petitioner was a repeat violent offender. As his fifth ground for relief, petitioner argues that appellate counsel was constitutionally ineffective for failing to identify as error the trial judge's imposition of a maximum sentence based on her allegedly faulty determination that petitioner was a repeat violent offender.

At the beginning of his trial, petitioner stipulated that he was a repeat violent offender subject to a finding of guilt in this case. (Doc. 5, Tr. 6-7). On direct appeal the Ohio Court of Appeals found that the state did not have to prove the elements of the repeat-violent-offender specification because petitioner stipulated that he was a repeat violent offender. (Doc. 4, Ex. G at 2). After finding petitioner guilty and reviewing his criminal record and in light of the stipulation, the trial judge made a finding that petitioner was a repeat violent offender. (Doc. 5, Tr. 77). She did not however give petitioner additional time for the repeat violent offender specification, instead imposing the maximum sentence of eight years on the felonious assault conviction. (Doc. 5, Tr. 88).

Under Ohio Rev. Code § 2929.14, a trial court may impose the maximum sentence for 1) those offenders committing the worst forms of the offense; 2) those posing the greatest likelihood of committing further crimes; 3) major drug offenders; and 4) repeat violent offenders. In this case, the trial judge indicated that petitioner's record "demonstrates the greatest likelihood of being a repeat offender," the second

---

[3]The Court applies a de novo standard of review to this claim, rather than the AEDPA reasonableness standard, because the state court did not address this particular claim of ineffective assistance of appellate counsel, (*see* Doc. 4, Ex. Q). *See Maples,* 340 F.3d at 436-437.

category of offenders listed under the statute. (Doc. 5, Tr. 87-88). In support of her decision, she cited petitioner's prior record composed of "serious offenses, violent offenses," petitioner's lack of remorse, petitioner's recent release from prison and his being committed to prison three previous times. (Doc. 5, Tr. 87-88). *See* Ohio Rev. Code § 2929.12 (D) (factors court should consider in determining whether offender is likely to commit future crimes).

Petitioner's claims of ineffective assistance of appellate counsel based on counsel's failure to challenge petitioner's repeat violent offender status lacks merit. Appellate counsel lacked grounds for challenging the court's finding that petitioner was a repeat violent offender because petitioner had stipulated before trial that he was a repeat violent offender. Since for that reason such a challenge would have been unsuccessful on appeal, appellate counsel did not prejudice the appellate proceeding by failing to raise the issue. Accordingly, petitioner has not demonstrated that counsel was constitutionally ineffective for failing to pursue this issue.

Moreover, it also appears that the trial court imposed the maximum sentence because petitioner fell into the category of offenders which posed the greatest likelihood of committing further crimes. For this reason, a successful challenge to his status as a repeat violent offender on appeal would probably not have affected the imposition of the maximum sentence. Accordingly, appellate counsel's failure to challenge the imposition of the maximum sentence on the ground that petitioner did not qualify as a repeat violent offender did not constitute deficient representation prejudicing petitioner.

Petitioner has, therefore, failed to establish that his appellate counsel was constitutionally ineffective as asserted in grounds four and five of the petition.[4] He is therefore not entitled to habeas corpus relief on the basis of these claims.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Docs. 1) be DENIED with prejudice.

---

[4]The Court applies a de novo standard of review to these claims, rather than the AEDPA reasonableness standard, because the state court did not address these particular claims of ineffective assistance of appellate counsel in ruling on petitioner's application, (*see* Doc. 4, Ex. Q). *See Maples,* 340 F.3d at 436-437.

2. A certificate of appealability also should not issue with respect petitioner's claims because, for the foregoing reasons, petitioner has failed to make a substantial showing of the denial of a constitutional right that is remediable in this proceeding. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). Petitioner has not shown that reasonable jurists could debate whether his claims should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 323-324 (2003) (quoting *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000)) (in turn quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)).

3. With respect to any application by petitioner for *in forma pauperis* status for the purposes of pursuing an appeal of an order adopting this report and recommendation, this Court certify that pursuant to 28 U.S.C. § 1915 (a) an appeal of this order would not be taken in "good faith," and, therefore, DENY petitioner leave to proceed on appeal *in forma pauperis*. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: February 9, 2004                                S/Timothy S. Hogan
        hr                                                            Timothy S. Hogan
                                                                      United States Magistrate Judge

J:\ROSENBEH\2254(2004)\01-838suff&waiverexc.wpd

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Todd B. Gibbs,
    Petitioner

vs                          Case No. 1:01cv838
                            (Dlott, J.; Hogan, M.J.)

Pat Hurley,
    Respondent

## NOTICE

    Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled action. Pursuant to Fed. R. Civ. P. 72(b), any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).